John Huber (7226)
Lauren DiFrancesco (14205)
**GREENBERG TRAURIG LLP**
222 S. Main St., Suite 1730
Salt Lake City, UT 84101
Telephone (801) 478-6918
Email: john.huber@gtlaw.com
Email: lauren.difrancesco@gtlaw.com

Thomas E. Butler (*pro hac vice* forthcoming)
**White & Williams LLP**
810 Seventh Ave.
New York, NY 10019
Telephone (212) 714-3070
Email: butlert@whiteandwilliams.com

*Attorneys for Plaintiff Todd Nelson*

## IN THE UNITED STATES DISTRICT COURT,
## DISTRICT OF UTAH – CENTRAL DIVISION

| | |
|---|---|
| TODD NELSON, <br><br>         Plaintiff, <br> v. <br><br> TROY PEHRSON; TRACI PHILLIPS; ASHLEY PHILLIPS; LARRY MAJORS; AUSTIN MAJORS, <br><br>         Defendants. | **COMPLAINT AND JURY DEMAND** <br><br> Case No. 2:24-cv-568 <br><br> Honorable |

Plaintiff, Todd Nelson, by and through his counsel, complains, alleges and avers against all Defendants as follows:

### **INTRODUCTION**

1.    This is a civil action seeking damages and relief for defamation per se, defamation, intentional infliction of emotional distress, wrongful use of civil proceedings, abuse of process, and civil conspiracy arising out of the Defendants' intentional and malicious conduct in spreading

1

false and damaging statements about the Plaintiff, Todd Nelson, and in pursuing frivolous claims with the ulterior motive of harming his reputation and extracting a substantial settlement from him.

2.      The defamation, defamation per se, intentional infliction of emotional distress, wrongful use of civil proceedings, abuse of process, and civil conspiracy are part of what has been a longstanding effort by Defendants to attack, disparage, vilify and otherwise cause significant injury to Todd Nelson in the aftermath of the tragic death by suicide of his daughter-in-law, Tiffani Nelson.

3.      Tiffani Nelson was the natural and legal daughter of Defendant Traci Philips and the sister of Defendant Ashley Philips and was married to Todd Nelson's son Justin Nelson. At the time of her death, Defendant Troy Pehrson was Tiffani's natural, but not legal father. Larry Majors was Tiffani's maternal grandfather. Austin Majors is Larry Major's son.

4.      Defendants' longstanding and well-coordinated course of conduct has taken many forms and has clearly been intended not only to harm Todd Nelson, but also to help the Defendants and their allies to cash in on Tiffani Nelson's tragic and untimely death.

5.      In August of 2023, the Defendants took their longstanding campaign to an unprecedented and even more damaging new place.  They commenced a lawsuit against Todd Nelson, in which they asserted a number of legally and factually baseless, scurrilous and completely unfounded allegations, and accused Todd Nelson not only of egregious misconduct, but also as having played a role in the events culminating in, and ultimately being responsible for, Tiffani Nelson's death.

6.      While the lawsuit was frivolous, the wrongdoing associated with it did not end with the scandalous allegations in the complaint.  Rather, Defendants collectively participated in the drafting, editing, and dissemination of a press release that not only described certain of the

2

complaint's false allegations, but in fact went further ("Press Release").  In addition to re-publishing the scurrilous allegations included in the complaint, the Press Release accused Todd Nelson of being involved in "emotional, verbal, and physical abuse" of Tiffani Nelson. These contentions, which were spread across social media as well as sent to specific, targeted individuals, were not only false and defamatory but amount to a claim that Todd Nelson was involved in heinous criminal activity and brought with them great harm to a reputation he has built and maintained through years of high-profile business activity and deep involvement in his communities.

7.      By this lawsuit, Todd Nelson seeks redress for the wrongdoing committed and harm inflicted in connection with the unfounded complaint (and efforts to have it dismissed) and the defamatory contents of the Press Release and its widespread publication on social media.

## THE PARTIES AND OTHERS

8.      Plaintiff, Todd Nelson ("Plaintiff" or "Todd") is an individual and is currently a citizen and resident of the State of Utah. Todd is the father of Justin Nelson and was the father-in-law of Tiffani Nelson.

9.      Defendant Traci Philips ("Traci") is an individual and is currently a citizen and resident of the State of California.  Traci was the mother of Tiffani Nelson.

10.      Defendant Troy Pehrson ("Troy") is an individual and is currently a citizen and resident of the State of Arizona. Troy was Tiffani's biological father, but not her legal father. Troy voluntarily relinquished his parent rights for Tiffani when she was a child following his divorce from Traci, in order to allow Tiffani to be adopted by Traci's then-husband, Jeffrey Phillips.

11.      Defendant Ashley Philips ("Ashley") is an individual and is currently a citizen of the State of California.  She was Tiffani's sister.

12.     Defendant Larry Majors ("Larry") is an individual and is currently a citizen and resident of the State of California. He was Tiffani's maternal grandfather (and Traci's father).

13.     Defendant Austin Majors ("Austin") is an individual and is currently a citizen and resident of the State of California. He is Larry Major's son, Traci's brother, and was Tiffani's uncle.

14.     Non-party Justin Nelson ("Justin") is Todd's son and was Tiffani's husband of over a decade at the time of her death. Since at least the fall of 2020, Justin has resided in the State of Utah.

15.     Non-party Tiffani Nelson ("Tiffani") was Justin's wife and Todd's daughter-in-law. From at least the fall of 2020 through the date of her death, Tiffani was residing in State of Utah.

## JURISDICTION & VENUE

16.     This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because (i) complete diversity exists between Plaintiff and the Defendants, and (ii) the amount in controversy exceeds $75,000.

17.     The Court has jurisdiction over each Defendant named herein, each Defendant having sufficient minimum contact with the State of Utah to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## BACKGROUND

### A.  Todd Nelson

19.     Todd is an esteemed member of the various communities he belongs to, and well known and admired for his integrity, kindness towards others, and devout involvement in his Church. Prior to Troy and Traci's false and defamatory Press Release (described in more detail below), Todd had never been accused of committing a crime against another person.

### B.  The Relationship Between Justin and Tiffani Nelson

20.     Justin and Tiffani Nelson were married in 2010.

21.     Over the course of their marriage, each enjoyed a loving relationship with Todd, who in turn provided emotional, financial, and other support to the couple.

### C.  Justin And Tiffani's Separation and Defendants' Pattern of Manipulation

22.     Unfortunately, Justin and Tiffani eventually became embroiled in significant marital conflict and discord.

23.     Ultimately, the couple separated, and Justin initiated divorce proceedings in February 2021, on the basis of irreconcilable differences.

24.     As marital troubles began and particularly when the separation and divorce filing were announced, Tiffani experienced severe emotional turmoil and distress and turned to Defendants, all members of her family, for support.

25.     Tiffani even unmistakably disclosed to certain family members, including at least Larry, Troy, Traci, and Ashley, that she was despondent and experiencing suicidal ideations, including stating she wanted to die and was struggling to live.  Not only did Defendants fail to render reasonable assistance to Tiffani in getting appropriate treatment for her severe mental health struggles, certain Defendants, including at least Traci and Ashley, exacerbated her struggles by being inexplicably cruel to her.

26.     For her part, Traci repeatedly ignored Tiffani's pleas for help and her suicidal disclosures, including turning off her phone and "ghosting" her for hours or days as a form of emotional punishment. Even worse, Traci discouraged Tiffani from seeking proper mental health care by telling Tiffani that if she did so she would "lose her babies forever".

27.     Ashley's conduct toward Tiffani was even worse.  In a series of messages, she told Tiffani:

- that Tiffani is "f[**]king insane" and "belong[s] in a mental hospital";

- "You [Tiffani] need f[**]king help";

- "you [Tiffani] have major mental issues";

- "You [Tiffani] don't even care about your kids";

- that Traci (their mother) "doesn't give a f[**]k about what you [Tiffani] ... think;"

- "Are you f[**]king kidding me?!?!?? Telling me you're going to die while I'm at work HOW IS THIS F[**]KING FAIR ?!?!?????????!!!!! ALL OF YOU STOP F[**]KING TALKING TO ME. EVERYONE!!!!! Ever again!!!!!!  ALL       OF YOU JUST GO F[**]K YOURSELVES!!!!!!!! Leave me the f[**]k alone!!!!!!!!!"

28.     Traci was contemporaneously aware of many of Ashley's cruel statements via a group text message and either expressly agreed with them by "liking" or "emphasizing" Ashley's text messages or other words of agreement or impliedly agreed with them by remaining silent in response to them.

29.     Tiffani repeatedly informed Traci and Ashley about how distressing their conduct towards her was during this time and repeatedly asked them to stop their behavior. Traci and Ashley continued their egregious behavior and bullying Tiffani notwithstanding Tiffani's repeated requests that it stop, particularly in light of her precarious emotional state.

30.     At the same time, Defendants launched into a pattern of manipulation, with the apparent hope that they could parlay the couple's marital problems into financial gain. And in

conjunction with these efforts, they began accelerated efforts to discredit, vilify and harm Todd. This campaign included, but was not limited to, the following:

- Ashley sent repeated texts to Tiffani, expressing her hatred for the Nelson family (including Todd), telling her she "wants [the Nelsons] to die" and suggesting that Traci should get his money;

- Traci coached Tiffani on how she should ask Todd for money to pay amounts due under her lease despite the impending divorce;

- Ashley suggested writing a letter to Todd's church in an effort to "annihilate" him;

- Ashley told Tiffani with regard to Todd (and his wife) that "they're not good and godly parents unfortunately." "[They are] evil Mormons that believe narcissism and abuse is the way to live";

- Traci freely admitted, in a text to Tiffani, that she encouraged her hostility in the hope that she could get money from the Nelsons, including Todd, as a result;

- Larry consistently advised Tiffani on legal strategy and on interactions with Todd, all with the same goal of maximizing financial recovery.

31. Traci also recommended to Tiffani that she file a protective order against Justin and "exaggerate" her already false allegations of wrongful conduct to increase her leverage over Justin in the divorce proceedings for financial gain, and even threatened to withdraw financial support from Tiffani if she failed to pursue the protective order.

32. In fact, Tiffani would later tell Todd during a telephone call that her family pressured her to file a false protective order against Justin to strongarm him during their separation. Tiffani even went so far to say that Tiffani herself did not write the application, but that it was written and edited by Traci and her attorney and that it was based on false claims invented by Larry for purposes of strengthening Tiffani's leverage in the divorce.

33. Larry was no stranger to such efforts at manipulation, having previously served time in prison for his involvement in various fraudulent schemes and having been found by a bankruptcy judge to have been involved in the unauthorized practice of law.

D. **Tiffani's Death and the Aftermath**

34.     On August 9, 2021, Tiffani tragically died by suicide in her residence in Washington City, Utah.  Tiffani's death has been determined by authorities to have been a suicide by hanging.  No charges were brought against anyone for any involvement in Tiffani's death.

35.     In the aftermath of Tiffani's tragic death, the Defendants merely accelerated their campaign of hate and disparagement directed towards Todd (as well as others in the Nelson family) suggesting they were responsible for Tiffani's death, despite Larry, Troy, Traci, and Ashley knowing about Tiffani's months-long mental health struggles and suicidal ideation and Traci and Ashley's own egregious conduct in worsening her emotional state.

36.     Attempting to gain financially from the circumstances, Traci also inexplicably falsely claimed that essentially all of the personal possessions in Tiffani's home at the time of her death were Traci's, including the children's clothing, toys, and furniture in their rooms, and also falsely claimed to have left a gold Rolex and thousands of dollars of cash in the home.

E. **The Wrongful Death Lawsuit**

37.     The campaign of malice reached its zenith in August, 2023, when Traci, along with Tiffani's biological father, Troy Pehrson, brought a lawsuit in Utah (the "Wrongful Death Case")[1] purporting to be Tiffani's heirs and personal representatives contending, inter alia, that Todd was responsible for Tiffani's tragic, self-inflicted death, bringing both wrongful death and survival claims against Todd based on negligence and negligent infliction of emotional distress and seeking significant damages (more than $10 million) for their unfounded claims.

38.     Outside of its bold tone and sweeping, conclusory assertions, the complaint as amended in the Wrongful Death Case (the "Wrongful Death Complaint") was entirely bereft of

---

[1] *See* Phillips, *et al*. v. Nelson, *et al*., Case No. 230401619 (Utah 4th Dist. Ct.).

8

any specific allegations that linked Todd – who had been a loving father-in-law and longtime supporter of Tiffani – to any actual wrongdoing, let alone to the events resulting in her tragic death.

39.     The Wrongful Death Complaint even alleges ongoing and continual support by Todd to Tiffani throughout her relationship with Justin, such as, but not limited to: paying for her tuition and living expenses for her to attend graduate school, supporting her and Justin financially at times during their marriage, paying rent for Tiffani's home after Tiffani and Justin separated, and buying Tiffani an engagement ring.

40.     The Wrongful Death Case against Todd was both legally and factually baseless for multiple reasons.

41.     Neither Traci nor Troy have ever been determined to be either an heir or personal representative of Tiffani's estate.[2] In fact, under the laws of both Utah and Arizona, Troy was a legal stranger to Tiffani for purposes of determination of Tiffani's intestate estate, having previously voluntarily relinquished his parental rights.

42.     The Wrongful Death Complaint included claims for Tiffani's death by suicide, despite the fact that the Utah Supreme Court has unmistakably held that Utah law does not recognize either wrongful death or survival claims in cases where the decedent causes their own death, including in instances of suicide.

43.     The Wrongful Death Complaint included a claim for civil conspiracy against Todd for alleged property damages, notwithstanding the fact that neither the Utah wrongful death nor survival statute permits claims for property damages.

44.     The Wrongful Death Complaint failed to allege any actual conduct by Todd that

---

[2] To the contrary, following dismissal of the claims in the Wrongful Death Case against Todd, Justin was adjudicated to be the sole heir and personal representative of Tiffani's estate.

caused or contributed to Tiffani's death, essentially only alleging that he somehow failed to prevent it, a claim not actionable under Utah law because there was not, nor has there ever been, a legally recognized affirmative duty of care between a father-in-law and his daughter-in-law.

45.     Troy and Traci's conduct in accusing Todd of failing to prevent Tiffani's death is even more egregious and unsupportable considering it was Troy and Traci, not Todd, who knew of Tiffani's severe emotional distress and suicidal ideation, and Traci played a substantial role in contributing to Tiffani's severe emotional distress and ultimate death.

46.     That Plaintiffs (and their counsel) were aware that their claims against Todd in the Wrongful Death Complaint lacked any legal basis in Utah law is evidenced by their inclusion of Rule 11 language in the Amended Complaint, claiming they "have a good faith argument that this claim is warranted by existing law or by a nonfrivolous argument for the modification or reversal of existing law."

47.     The Wrongful Death Complaint included false allegations of criminal conduct against Todd that were completely unrelated to any claims against Todd, namely that Todd allegedly failed to disclose to U.S. Customs and Border Patrol his alleged purchase of a diamond for Tiffani's engagement ring in Greece. Indeed, as of the filing of this case, Todd has never even been to Greece; the diamond purchased for Tiffani's engagement ring was purchased from a jeweler in Chandler, Arizona.

48.     Todd moved to dismiss all of the claims against him in the Wrongful Death Complaint with prejudice, asserting, inter alia, that it failed to state a claim under controlling, unequivocal Utah law (the "Motion").

49.     Like the Wrongful Death Complaint, Traci and Troy's opposition to the Motion similarly lacked any basis in Utah law.

50.     Traci and Troy opposed the Motion claiming, in relevant part, that the Utah Supreme Court's interpretation of the relevant statutes was dicta that the district court was not obligated to follow—despite the Utah Supreme Court having held directly to the contrary, and not citing a single case, in Utah or elsewhere, recognizing an affirmative duty of a father-in-law to his daughter-in-law for purposes of negligence claims.

51.     As to certain claims, Traci and Troy did not even oppose the Motion—evidencing that they lacked probable cause to bring them in the first instance.

52.     On February 19, 2024, all claims against Todd asserted in the Wrongful Death Complaint were dismissed on legal grounds, given the procedural posture of the Motion.

**F.   The Press Release**

53.     Following Todd receiving notice of the Wrongful Death Case, Todd (and Justin) moved the Court to make the docket in the Wrongful Death Case private to restrict public access to the filings given their private and sensitive nature, which the Court granted.

54.     On or about August 15, 2021, one of the ulterior motives of Traci and Troy in filing the legally and factually baseless Wrongful Death Case against Todd—to defame him—was unmistakably revealed when Defendants launched yet another assault on Todd with the Press Release that they orchestrated, drafted, and caused to be disseminated announcing the filing of the Wrongful Death Case, repeating many of its heinous allegations and even going a step further to allege Todd inflicted "emotional, verbal, and physical abuse" against Tiffani and saying the Wrongful Death Complaint "allegations encompass instances of verbal and physical aggression, coercive control over [Tiffani's] choices and interactions, and insidious manipulation orchestrated by … Todd Nelson."

55.     The Press Release also revealed that the "lawsuit's core objective is to secure justice

for Tiffani Nelson and hold those responsible accountable for the events that befell her"—an ironic statement considering Traci's egregious conduct.

56.     The Press Release also deviated from the complaint in the Wrongful Death Case in a significant way:  It contended that Tiffani's life included years "marked by emotional, verbal, and physical abuse inflicted upon her by … Todd Nelson" as well as "verbal and physical aggression" by Todd. In other words, according to the Press Release, Todd stood accused of "abusing" Tiffani—emotionally, verbally, and physically.

57.     Each of these allegations of abuse by Todd are patently false and defamatory—of course, Todd never abused Tiffani emotionally, verbally, or physically, nor did he inflict any other kind of abuse or wrongdoing against Tiffani; and there were no such allegations in the Wrongful Death Complaint.

58.     Upon information and belief, each of the Defendants was actively involved in the drafting, editing, and/or dissemination of the Press Release.

59.     The Press Release is drafted in a way that suggests it came from or was facilitated by Brody Valerga, the Utah lawyer handling the Wrongful Death Case for them—both quoting him and listing his information as the point of contact.  When confronted with the Press Release by counsel for Todd, Mr. Valerga denied in writing any prior knowledge of, or involvement in, the issuance of the Press Release.

60.     Upon information and belief, the Press Release, along with the Wrongful Death Case itself, was the brainchild of Larry and Austin Majors, who actively planned the Defendants' legal and public relations' strategy, as they had previously been involved in legal strategy in Tiffani's divorce.

61.     On August 11, 2023, "Bruce Xavier" created and shared the Press Release via a

Google Document link, which made it accessible to anyone on the internet with the link. At that time, the document was titled "PR austinmajors952.docx".

62.     Upon information and belief, Bruce Xavier is a pseudonym for Austin and/or Larry Majors and either or both of them together were the creators of the Google Document that became the Press Release.[3]

63.     Later on August 11, 2023, Traci Phillips renamed the Google Document "Press Release August 11.docx".

64.     The Press Release constitutes statements made outside the course of a judicial proceeding.

65.     Upon the initial release of the Press Release, the Defendants endeavored to spread it – and its defamatory content – as widely as possible.

66.     On August 15, 2023, both Traci and Ashley posted a screenshot of and link to the Press Release on their respective Facebook pages.  Both posts notably omitted any mention of Traci and Ashley's own egregious conduct toward Tiffani leading up to her death.

67.     Both Facebook posts were "public" meaning anyone with a Facebook account could view them.

68.     The Facebook posts also independently included allegations of abuse and bullying by the "Nelson family," of which Todd is a member.

69.     Traci's Facebook post specifically requested readers "share this post widely to spread the message far and wide."

70.     As of the filing of this complaint, the two posts collectively had been shared over

---

[3] Bruce Xavier is a famous Mixed Martial Arts ("MMA") fighter. Both Austin and Larry Majors are avid MMA enthusiasts.

50 times and "liked" by over 200 viewers.

71.     The Press Release was disseminated to and viewed by a significant number of persons who were and are unnecessary to resolve the Wrongful Death Case.

72.     Upon information and belief, Larry, Austin, and Troy also disseminated the Press Release to individuals who were and are unnecessary to resolve the Wrongful Death Case.

73.     Around this same time period, a copy of the Wrongful Death Complaint was mailed to Justin's current wife's workplace, using an anonymous postal service to ship from a small and obscure town in Texas.

74.     Around this same time period, a copy of Wrongful Death Complaint was emailed to Justin's current wife's employer, using an anonymous email address.

75.     Upon information and belief, it was Defendants who mailed and emailed the Wrongful Death Complaint to Justin's current wife's employer. Indeed, before Tiffani's death, Ashley told Tiffani that when Justin started dating again, she would "warn" them.

76.     Defendants' conduct has persisted even after the claims against Todd in the Wrongful Death Complaint were dismissed, as evidenced by the continued availability of the Press Release on their social media accounts and through the Google Document link, as well as continued social media posts defaming Todd, such as Traci saying "They [the Nelsons, including Todd] took my daughter…" (posted on March 27, 2024).

77.     Todd seeks to put an end to the Defendants' defamatory attacks and seeks redress for the same, as well as their malicious and improper use of the legal system against him.

### FIRST CLAIM FOR RELIEF
### (Defamation Per Se)

78.     Plaintiff incorporates and re-alleges the allegations above as though fully set forth herein.

14

79.     Beginning in August of 2023 and continuing to this day, the Defendants have spoken or published false statements to third parties regarding Todd, including, but not limited to, the claim that Tiffani was the victim of "physical abuse" inflicted upon her by Todd and that Todd violated U.S. law by failing to disclose the purchase of a diamond overseas upon re-entry into the United States.

80.     The claim that Tiffani was the victim of "physical abuse" inflicted by Todd was not only false but alleges criminal conduct on the part of Todd as well as conduct that is incongruous with the exercise of a lawful business, trade, profession, or office.

81.     The claim that Todd failed to disclose the overseas purchase of a diamond upon reentry to the United States was not only false and completely unrelated to the legal claims against Todd but alleges criminal conduct on the part of Todd as well as conduct that is incongruous with the exercise of a lawful business, trade, profession, or office.

82.     The Defendants published the aforementioned false and defamatory statements, including the statement that Todd inflicted physical abuse on Tiffani, in print and/or orally.

83.     The statements, including the statements that Todd inflicted physical abuse on Tiffani and failed to disclose the overseas purchase of a diamond upon reentry to the United States, were not subject to any privilege.

84.     The statements were published with the requisite degree of fault, insofar as Defendants knew and presently know that their statements are false, untrue, and damaging to Mr. Nelson's personal and professional reputation.

85.     The statement that Todd inflicted "physical abuse" on Tiffani constitutes defamation per se.

86.     The statement that Todd failed to disclose the overseas purchase of a diamond upon reentry to the United States constitutes defamation per se.

87.     As a direct and proximate result of Defendants' defamatory statements, Todd has suffered damages, including, but not limited to pecuniary damages, harm to his reputation in his community and within his profession and emotional distress, and has been subjected to ridicule, humiliation and loss of personal and professional esteem.

## SECOND CLAIM FOR RELIEF
### (Defamation)

88.     Plaintiff incorporates and re-alleges the allegations above as though fully set forth herein.

89.     Beginning in August of 2023 and continuing to this day, the Defendants have repeatedly published false statements to third parties regarding Todd, including, but not limited to, 1) that Tiffani was subjected to emotional, verbal, and physical abuse inflicted upon her by Todd; 2) that Todd engaged in verbal and physical aggression toward Tiffani; 3) that Todd engaged in coercive control over Tiffani's choices and interactions; 4) that Todd engaged in insidious manipulation towards Tiffani; 5) that Todd was responsible for Tiffani's death, and 6) that Todd failed to disclose the overseas purchase of a diamond upon reentry to the United States.

90.     All of the aforementioned statements were false.

91.     The Defendants published the aforementioned defamatory statements in print and/or orally.

92.     The aforementioned defamatory statements were not subject to privilege.

93.     The aforementioned defamatory statements were published with the requisite degree of fault insofar as the Defendants knew and presently know that their statements are false, untrue, and damaging to Mr. Nelson's personal and professional reputation.

16

94.     As a direct and proximate result of Defendants' defamatory statements, Todd has suffered damages, including, but not limited to pecuniary damages, harm to his reputation in his community and within his profession and emotional distress, and has been subjected to ridicule, humiliation, and loss of personal and professional esteem.

## THIRD CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress)

95.     Plaintiff incorporates and re-alleges the allegations above as though fully set forth herein.

96.      Defendants have intentionally and maliciously engaged in a pattern of improper and abusive conduct towards Plaintiff, including but not limited to by making accusations that 1) Todd physically, verbally and emotionally abused Tiffani; 2) Tiffani "bore unfathomable agony" at Todd's hands; 3) Todd engaged in verbal and physical aggression toward Tiffani; 4) that Todd engaged in coercive control over Tiffani's choices and interactions; 5) Todd engaged in insidious manipulation towards Tiffani; and 6) Todd ultimately was responsible for Tiffani's death, and by spreading these false allegations widely across social media.

97.     Defendants' conduct toward the Plaintiff was outrageous and intolerable in that it offends the generally accepted standards of decency and morality.

98.     Defendants engaged in this conduct with the purpose of inflicting emotional distress, or despite the fact that any reasonable person would have known that the same would result.

99.     As a direct and proximate result of Defendants' conduct, Todd has suffered damages, including experiencing severe emotional distress.

## FOURTH CLAIM FOR RELIEF
### (Wrongful Use of Civil Proceedings – Traci & Troy)

100.    Plaintiff incorporates and re-alleges the allegations above as though fully set forth herein.

101.    Traci and Troy instituted and maintained the claims in the Wrongful Death Complaint against Todd for an improper purpose and without a justifiable basis.

102.    Traci and Troy instituted and maintained the claims against Todd in the Wrongful Death Complaint without probable cause. The claims against Todd in the Wrongful Death Complaint were factually and legally baseless for the multiple reasons set forth above. Traci and Troy did not have a reasonable belief in the existence of the facts upon which they based the claims against Todd and did not reasonably believe that under those (or any) facts their claims against Todd may be valid under Utah law. Moreover, Traci and Troy failed to make a good faith argument for change of law to otherwise support their claims against Todd.

103.    Traci and Troy instituted and maintained the claims against Todd in the Wrongful Death Complaint for an improper purpose, namely with knowledge that their claims were non-meritorious, because of hostility, ill will, and/or malice, to extort money from Todd, to defame Todd, to harass or annoy Todd, and/or to force a settlement from Todd that has no relation to the merits of the claims.

104.    Traci and Troy instituted and maintained the claims against Todd in the Wrongful Death Complaint maliciously and with the intent of injuring Todd.

105.    The claims against Todd in the Wrongful Death Complaint have been terminated in favor of Todd.

106.    As a direct and proximate result of Traci and Troy's conduct, Todd has suffered damages including, but not limited to, attorneys fees and costs incurred in connection with securing dismissal of the claims in the Wrongful Death Complaint, damage to his reputation, and emotional

distress.

## FIFTH CLAIM FOR RELIEF
### (Abuse of Process – Traci & Troy)

107.     Plaintiff incorporates and re-alleges the allegations above as though fully set forth herein.

108.     Traci and Troy used the legal process against Todd primarily to accomplish a purpose for which it is not intended.

109.     Traci and Troy instituted and maintained the claims against Todd in the Wrongful Death Complaint for the primary purpose of attempting to spread their false narrative about Todd and cause damage to his reputation, by attempting to cloak their false narrative in the litigation proceedings privilege and lend "credence" to their defamatory statements through use of the legal process.

110.     Traci and Troy's improper purpose in bringing the legally and factually baseless claims in the Wrongful Death Complaint against Todd is demonstrated by their conduct in drafting, editing, and disseminating the Press Release, which summarized and referenced the false statements in the Wrongful Death Complaint and included the Wrongful Death Case number and court location, and actively encouraging others to share the information about the Wrongful Death Case.

111.     As a direct and proximate result of Traci and Troy's conduct, Todd has suffered damages including, but not limited to, attorneys fees and costs incurred in connection with securing dismissal of the claims in the Wrongful Death Complaint, damage to his reputation, and emotional distress.

## SIXTH CLAIM FOR RELIEF
### (Civil Conspiracy)

112.    Plaintiff incorporates and re-alleges the allegations above as though fully set forth herein.

113.    A civil conspiracy exists among all of the above-named Defendants.

114.    A combination of the five Defendants participated in the civil conspiracy.

115.    The object to be accomplished by the conspiracy was to spread false and defamatory allegations about Todd, to inflict both monetary and non-monetary injury to Todd, to harass and annoy Todd, and to extract a substantial financial settlement from Todd.

116.    Defendants had an explicit and/or implicit meeting of the minds with respect to the course of action they would pursue and the object they would seek to accomplish.

117.    Defendants committed one or more unlawful, overt acts in furtherance of the conspiracy, to wit, the creation and multiple publications of defamatory statements regarding Todd, the filing of frivolous legal claims against Todd, and abuse of the legal process with the intent to harm Todd through excessive publication of their frivolous lawsuit against Todd.

118.    As a direct and proximate result of Defendants' conspiracy, Todd suffered damages, including, but not limited to pecuniary damages, harm to his reputation in his community and within his profession, emotional distress, and loss of personal and professional esteem.

## PRAYER FOR RELIEF

119.    Plaintiff respectfully requests that the Court grant the following relief:

120.    Enter judgment in favor of the Plaintiff and against all of the Defendants on all counts alleged herein.

121.    Award compensatory, economic, non-economic, and punitive damages in an amount to be determined at trial, but no less than $500,000.

122.    Issue injunctive relief restraining the Defendants from further dissemination of false and defamatory statements about the Plaintiff.

123.   Order the Defendants to retract their defamatory statements and issue a public apology.

124.   An award of any/all legal costs and fees incurred by the Plaintiff.

125.   Grant such other and further relief as this Court deems just and proper.

## **<u>JURY DEMAND</u>**

Plaintiff, by and through his counsel, hereby demands trial by jury on all matters alleged herein.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all issues so triable.


DATED August 7, 2024


**GREENBERG TRAURIG LLP**

<u>/s/   *Lauren DiFrancesco*    </u>
John Huber
Lauren DiFrancesco

Thomas Butler
**WHITE AND WILLIAMS LLP**

*Attorneys for Plaintiff Todd Nelson*